UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMONWEALTH INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> MARYLAND CASUALTY CO., et al., <br><br> Defendants. | No. C02-2222P <br><br> ORDER DENYING MARYLAND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART COMMONWEALTH INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Maryland Casualty Co.'s ("Maryland") Motion for Summary Judgment, (Dkt. No. 145), Plaintiff Commonwealth Insurance Co.'s ("Commonwealth") Motion for Partial Summary Judgment, (Dkt. No. 142), and Commonwealth's Motion to Strike, contained in its reply brief, (Dkt. No. 161). Having reviewed the pleadings and supporting materials, and having found that oral argument is not necessary, the Court rules as follows.

The Court GRANTS Commonwealth's Motion to Strike. The declarations of James Donovan and Dwain Britton are both inconsistent with previous deposition testimony by each. There is no basis

ORDER - 1

1  to conclude that the documents in the exhibits attached to their declarations are credible and reliable

2  business records.

3      The Court DENIES Maryland's Motion for Summary Judgment. Commonwealth has

4  presented sufficient evidence to show that damage began before Donovan completed its work, and

5  that this damage continued and culminated in the February, 1999 flood.

6      The Court GRANTS in part and DENIES in part Commonwealth's Motion for Partial

7  Summary Judgment. The undisputed facts show that Maryland did not respond within 10 days or

8  investigate within 30 days of Ledcor's tender as required by WAC 284-30-360(1) and 284-30-370.

9  Summary judgment is granted as to that single issue. Summary judgment is denied, however, as to

10 whether Maryland violated WAC 284-30-330(2)-(5) because those regulations impose a reasonability

11 standard and there are genuine issues of fact as to the reasonableness of Maryland's conduct. For this

12 same reason, summary judgment is denied as to whether any of Maryland's conduct constitutes an

13 unfair trade practice because this also incorporates a reasonability standard and there are genuine

14 issues of fact as to the reasonableness of Maryland's conduct.

15                                     BACKGROUND

16     This case concerns disputes between various insurance companies that arise out of property

17 damage to a residential house. In early 1998, Sandra Yeater contracted with Ledcor Inc. ("Ledcor")

18 to build a house for her in Kirkland, Washington. On March 2, 1998 Ledcor contracted with

19 subcontractor Donovan Excavating, d/b/a/ J&D Excavating ("Donovan") to perform "earthwork,"

20 including the installation of drainage systems.

21     The house subsequently experienced at least three separate incidents of water intrusion.

22 Sometime in May, 1998, there was a small amount of seepage in the southwest corner of the

23 basement. Ledcor notified Donovan and Donovan repaired the problem. On August 3, 1998, Ms.

24 Yeater received a certificate of occupancy and moved in a few days later. Sometime in October or

25 November, 1998, she noticed small amounts of water on the floor in the mechanical room (which is in

ORDER - 2

the northeast corner of the basement). In February, 1999, her house suffered a more severe water intrusion incident, in which hundreds of gallons of water flooded her basement living area.

Commonwealth Insurance Company ("Commonwealth") insured Ledcor from December, 1997 until December, 1998. A series of different companies provided insurance coverage to Donovan:

1) Western National Assurance Company ("Western")   May 1, 1997 – May 1, 1998
2) Valley Insurance Company ("Valley")   May 1, 1998 – July 8, 1998
3) First National Insurance Company ("First National")   July 8, 1998 – December 5, 1998
4) Maryland Casualty Company ("Maryland")   December 5, 1998 – December 5, 1999

Pursuant to the contract between Ledcor and Donovan, Ledcor was to be named as an "additional insured" on Donovan's insurance policy.

Commonwealth paid Ledcor's liability damages to Ms. Yeater, but filed this lawsuit for indemnification, arguing that Ledcor was an "additional insured" on Donovan's various insurance policies and therefore Donovan's insurers are required to reimburse Commonwealth for the amount it paid to settle the claims against Ledcor.

Maryland previously moved for summary judgment that, among other things, Ledcor was not an insured under Maryland's policy because the damage occurred after Donovan's work for Ledcor was complete. At the same time, Commonwealth moved for summary judgment that Ledcor was an insured under Maryland's policy, which triggered a duty to defend, and that Maryland breached this duty in bad faith. Commonwealth argued that this breach estopped Maryland from asserting the defense that Ledcor was not covered under Maryland's policy.

In December, 2004, this Court denied the parties' cross-motions for summary judgment. (Dkt. No. 121 ("Order")). The Court held that Ledcor could potentially be an "additional insured" under Maryland's policy and therefore Maryland could potentially be liable under a continuing loss theory. Under the terms of Maryland's policy, Ledcor would be covered as an additional insured if the damage occurred before Donovan completed its work. The Court found that there were genuine issues of

material fact as to the date that Donovan completed its work. It was finished sometime between May and July, 1998. Even though Maryland's policy did not begin until well after July, 1998, Ledcor could still be deemed an additional insured if the February, 1999 flood was a continuation of on-going damage that began before Donovan completed its work. Neither party had presented evidence on this question. In sum, the Court concluded that Ledcor would be covered if there was on-going damage that culminated in the February, 1999 flood but which began before Donovan completed its work.

Maryland now moves for summary judgment on one issue. Maryland contends that Commonwealth has no evidence that damage began before Donovan completed its work and that this damage was on-going and culminated in the February, 1999 flood.

Commonwealth moves for summary judgment on one issue. Commonwealth contends that Maryland violated Washington's insurance practice regulations, WAC 284-30-330(2)-(5), 284-30-350(1), 284-30-360(1), and 284-30-370, and that even one such violation is an unfair trade practice. In its reply brief, Commonwealth asserts that it is not seeking summary judgment that Maryland acted in bad faith or violated the Consumer Protection Act ("CPA").

Commonwealth also moves to strikes the declarations of James Donovan and Dwain Britton and the attached exhibits that Maryland submitted with its response to Commonwealth's motion. Maryland cites to these declarations and exhibits to claim that Donovan completed its work by May 25, 1998.

## ANALYSIS

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the

ORDER - 4

burden to show initially the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. <u>Id.</u> at 324. Additionally, "at the summary judgment stage the judge's function is not . . . to weigh the evidence . . . but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 249.

I.  <u>Commonwealth's Motion to Strike</u>

    A.  <u>James Donovan's Declaration and Attached Exhibits</u>

Mr. Donovan states in his declaration that his company utilizes a database to track invoices, payments, and work performed by the company, which is maintained in the regular course of business. (Donovan Decl., ¶¶3-8). He attaches a "Customer QuickReport" to his declaration, which he asserts is from the database, to show the dates he sent invoices out or received payments for work on the Yeater house. It shows the first invoice sent out on February 16, 1998 and the last on May 25, 1998. (Id., Ex. A). According to Mr. Donovan, this report shows that the work was complete by May 25, 1998. He also attaches a "Time Activity Detail" to his declaration, which he asserts is from this same database, to show when Dwain Britton (a Donovan employee) worked on the Yeater house. (Id., ¶¶ 9-10). According to Mr. Donovan, this report shows that Mr. Britton worked only on May 14 and 15, 1998.

Commonwealth's motion to strike this declaration and exhibits is well founded. Mr. Donovan's declaration statements contradict his earlier deposition statements. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991). In his deposition, he stated that his computer

ORDER - 5

records were incomplete, that he did not consistently maintain records or time sheets for his employees, and that he had misplaced or lost some of the documents relating to the Yeater project. (Grant Decl., Ex. 2 at 8-9, 15-17, 27). There is no evidence that the data presented with Mr. Donovan's declaration was entered contemporaneously as required for admission of business records. Additionally, there are good reasons to doubt the accuracy of these reports. The Customer QuickReport refers to an invoice date of February 16, which is two weeks before Donovan and Ledcor signed their subcontractor contract. Similarly, the Time Activity Detail for Mr. Britton refers only to unbilled work, not to billed work, and contradicts Mr. Britton's deposition testimony that he worked at the Yeater house early in its construction and then again near its completion. (Id., Ex. 3 (hereinafter "Britton Dep.") at 32-33). In sum, there is no assurance that this data is credible and reliable. Therefore, the Court strikes this declaration and attached exhibits.

### B. Dwain Britton's Declaration

Mr. Britton states in his declaration that he has reviewed the Time Activity Detail discussed above, which shows that he worked on the Yeater house on May 14 and 15, 1998, and that this report has refreshed his recollection about the dates he worked on the Yeater house. (Britton Decl., ¶¶ 4-5). In his earlier deposition, he stated that he did not keep daily logs that he turned into Donovan, but that he remembers working on the house in the early part of the year, (January or February) and then again sometime close to summer, possibly May, June, or July. (Britton Dep. at 32-33).

Again, Commonwealth's motion to strike this declaration is well founded. Mr. Britton has no personal knowledge regarding the accuracy of the Time Activity Detail and therefore no basis to rely on it to "refresh" his memory. His declaration is plainly inconsistent with his deposition statement. The Court strikes this declaration.

### II. Maryland's Motion for Partial Summary Judgment

Maryland first argues that Commonwealth has no evidence that the May, 1998 incident in the southwest corner of the basement was a result of on-going damage which also caused the February,

ORDER - 6

1999 flood. In fact, Commonwealth's evidence shows the opposite. Maryland cites to deposition testimony by Commonwealth's expert Robert Pride in which he opines that the May, 1998 incident did not cause or contribute to the February, 1999 flood. (Sparling Decl., Ex. C (hereinafter "Pride Dep.") at 83). Commonwealth does not challenge this argument.

Instead, Commonwealth argues that, before Donovan completed its work, water infiltrated and built up in the area behind the retaining wall in the northeast corner and began to cause damage that was on-going and culminated in the February, 1999 flood. Commonwealth relies on the opinions of its expert Robert Pride.

Maryland's argument for summary judgment is based almost entirely on Mr. Pride's testimony. Maryland argues that Mr. Pride's opinions are insufficient to survive summary judgment because he cannot say on a more probable than not basis that the damage first occurred before Donovan completed its work, but can only "estimate" that the damage began sometime between July and August, 1998. (Donovan completed its work at the latest sometime in July, 1998.) Maryland maintains that such an "estimate" is purely speculative and cannot create a genuine issue of fact.

Mr. Pride was deposed after this Court denied the first round of summary judgment motions. He investigated and observed the Yeater house on March 29, 1999. He states that at that time observed water stain marks on a mud sill (a horizontal strip of wood mounted above the foundation to which the studs are attached). Based on these observations, it is his opinion that water began backing up behind the retaining wall as early as May, 1998. (Pride Dep. at 40-41). When questioned about why he concluded that the water began building up as of that date, at first he could not point to any particular reason. (Id. at 41-42). He then stated:

> it was clear that the framing for that mechanical room wall had been in contact with water for a long time. It wasn't just a few weeks or couple of months. It takes a while for water to create wood deterioration, softening of the wood and dry rot, and that was a long-term problem. And in my opinion, that started nearly a year prior to the inspection that I made in March of 1999.

ORDER - 7

1 (Id. at 43). Later, he was again asked if he could say when the water first started to build up. He
2 replied:

> Again, there's no way anybody can pin down a date, but based on my evaluation of wood damage – it's mostly because it takes longer for wood to react to water and become soft and go into deterioration mode, but based on the observations of the framing, principally the mud seal [sic] had been exposed for at least eight or nine months. The extent of the damage I would have expected would have taken a year, but, you know, the house hadn't been framed at that time, but it was a good eight or nine months.

7 (Id. at 46). In a slight variation on this question, he was asked "when the water first made it through
8 the cold joint into the wood." (Id. at 48). He responded that, in his opinion it was six or eight or nine
9 months. (Id. at 49). Lastly, he was asked if his opinion regarding the eight or nine months was an
10 estimate, to which he replied that it was. (Id. at 68). His estimate that the water began to build up
11 and to damage the wood eight to nine months before March 29, 1999 means that, in his opinion, the
12 damage began between July and August, 1998.

13 In response to Maryland's motion, Mr. Pride attempts to "clarify" some of his deposition
14 statements in a declaration attached to Commonwealth's response. Maryland challenges the
15 declaration as being inconsistent with Mr. Pride's deposition and therefore insufficient to create an
16 issue of fact to survive summary judgment. Some of his declaration statements are inconsistent, but
17 not all of them. He states that it is his opinion "on a more probable than not basis," that the house
18 began suffering damage somewhere between late March, and July, 1998 and that this damage
19 continued until its discovery in March, 1999. (Carr Decl., Ex. 9 (hereinafter "Pride March 30th
20 Decl."), ¶ 4). This statement is inconsistent in that Mr. Pride never stated in his deposition that the
21 damage began as early as late March, 1998. Rather, the earliest he estimates is nine months, which is
22 July, 1998. He later states in his declaration that it is his opinion "on a more probable than not basis,"
23 that the damage began no later than July of 1998. (Id., ¶ 7). Again, this is inconsistent to the extent
24 that he suggests the damage began earlier than July. In his deposition, the outer range of time was
25 nine months; nine months before March 29, 1999 was June 29, 1998 (essentially July, 1998). In sum,

ORDER - 8

to the extent that he asserts that the damage began earlier than July, his declaration is inconsistent with his deposition. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy, 952 F.2d at 262. (In any event, this is of marginal relevance because if the damage began in July, it may have began before Donovan completed his work, which was possibly at some point in July.)

Maryland points to two problems with Mr. Pride's deposition testimony.[1]  First, Maryland contends that his "estimate" is nothing more than speculation as to when the water began to build up and when the resulting damage began. Second, Maryland points to Mr. Pride's estimate of a three-month window during which the damage began (the second and third months were undisputedly after Donovan completed its work, but the first may have overlapped with Donovan's work), and argues that because Mr. Pride can only point to a three-month window, he cannot say on a more probable than not basis that the damage began before Donovan completed his work.

Contrary to Maryland's argument, Mr. Pride's estimate of when the damage began is not speculative. It is true that evidence based on speculation is not sufficient to survive judgment. Guidroz-Brault v. Missouri Pac. R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001). However, the mere fact that Mr. Pride estimated when the damage began does not mean that his estimate is based on speculation. Mr. Pride's testimony is based on his observations of the Yeater house, together with his experience and expertise in this field regarding the amount of time it takes for wood to began to deteriorate from constant contact with water. As such, it is not speculation.

Maryland's second argument is likewise not persuasive. Mr. Pride's declaration statements that his opinion was "on a more probable than not basis" is not necessarily inconsistent with his deposition because he did not assert the contrary in his deposition. While he estimated that the

---

[1] Maryland obliquely questions Mr. Pride's qualifications as an expert on the decay rate of wood exposed to water without mounting a direct attack. (See Dfs' Mot. at 2 n.1). Because Maryland does not directly attack his qualifications, the Court will not address this issue at this time.

ORDER - 9

damage began between July and August, 1998, such an estimate can be "on a more probable than not basis." The real question is whether Mr. Pride's expert opinion testimony is evidence upon which a reasonable jury could find that the damage began in July, sometime before Donovan completed its work. "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Guidroz-Brault, 254 F.3d at 829 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Given the fact that the Court must view the evidence in the light most favorable to Commonwealth (the non-moving party) and the fact that there is evidence that the damage began in July, which is possibly before Donovan completed its work, the Court concludes that a reasonable jury could find in Commonwealth's favor. This precludes summary judgment.

III.  Commonwealth's Motion for Partial Summary Judgment

Commonwealth seeks summary judgment that Maryland violated state insurance practice regulations by the way it responded to Ledcor's tender, and that even one such violation constitutes an unfair trade practice. Commonwealth alleges that Maryland violated WAC 284-30-330(2)-(5), 284-30-350(1), 284-30-360(1), and 284-30-370. WAC 284-30-330 identifies specific claims settlement practices as unfair practices: (2) failing to acknowledge and act reasonably promptly upon communications regarding claims, (3) failing to adopt and implement reasonable standards for the prompt investigation of claims, (4) refusing to pay claim without conducting reasonable investigation, (5) failing to affirm or deny coverage of claims within a reasonable time. WAC 284-30-350(1) bars an insurer from failing to disclose to claimants all pertinent benefits, coverage, or other provisions of the policy. WAC 284-30-360(1) requires that an insurer acknowledge receipt of a notification of claim within 10 days of receiving it. WAC 284-30-370 requires that an insurer complete an investigation within 30 days after notification of a claim.

As a threshold matter, Maryland argues that these regulations do not apply in this situation because Ledcor was not an "additional insured" under Maryland's policy. Commonwealth counters that Ledcor was an insured and that an insured is entitled to the protection of these regulations

ORDER - 10

regardless of the ultimate determination regarding coverage. Coventry Assoc. v. Am. States Ins. Co., 136 Wa.2d 269, 279, 961 P.2d 933 (1998). The Court held in its previous summary judgment order that "Ledcor was . . . an insured under Maryland's policy, but its status as an insured extended only to 'covered' property damage that resulted from Donovan's work under its contract with Ledcor. Covered property damage is damage that occurred before Donovan's work under the Ledcor-Donovan contract was compete or Donovan's work under that contract was put to its intended use, whichever happened earlier." (Order at 6). Therefore, these regulations apply to Ledcor because it was an insured, but only to the extent that the property damage was "covered."

There are genuine issues of fact as to whether Maryland violated WAC 284-30-330(2)-(5). Those regulations all impose a reasonability standard. In the last round of motions, the Court concluded that there were genuine issues of material fact as to the reasonableness of Maryland's conduct. Maryland presented evidence with the last round of motions showing that Mr. Lautrup communicated with Ledcor's attorney in the months following the tender of the claim and that Maryland relied on Safeco's investigation rather than conducting its own. Additionally, Maryland had concluded that this was not "covered" property damage and therefore Ledcor would not have insured status under its policy. In other words, the reasonableness of Maryland's conduct depends, in part, on whether Ledcor was an insured, which in turn depends on whether the property damage was "covered." All of this shows that there are genuine issues of fact as to whether Maryland violated subsection (2) (failing to acknowledge and act reasonably promptly upon communications regarding claims), subsection (3) (failing to adopt and implement reasonable standards for the prompt investigation of claims), subsection (4) (refusing to pay claim without conducting reasonable investigation), or subsection (5) (failing to affirm or deny coverage of claims within a reasonable time).

To the extent that Ledcor was an insured under Maryland's policy, the undisputed facts show that Maryland did not respond within 10 days or investigate within 30 days of receiving the tender as

ORDER - 11

1  required by WAC 284-30-360(1) and 284-30-370. Ledcor tendered a claim to Maryland on March
2  31, 2000. (Carr Decl. (Dkt. No. 96), Ex. 26). Commonwealth points to deposition testimony by Jeff
3  Lautrup, Maryland's representative responsible for this claim, in which he admits that he did not
4  respond to the notification. Maryland does not dispute this fact. Thus, Maryland did not
5  acknowledge receipt of the claim within 10 days or investigate within 30 days as required by WAC
6  284-30-360(1) and 284-30-370 respectively.

7  However, even if Commonwealth has established that Maryland violated WAC 284-30-360
8  and 284-30-370, that does not necessarily mean that Maryland engaged in an unfair trade practice.
9  Commonwealth has not pointed to any case law that treats a violation of WAC 284-30-360 and 284-
10 30-370 as per se unfair trade practice. Commonwealth points to Indus. Indem. Co. v. Kallevig, 114
11 Wa.2d 907, 924, 792 P.2d 520 (1990), in which the Supreme Court held that even a single violation of
12 WAC 284-30-330 constitutes an unfair trade practice under the CPA. However, Kallevig addressed
13 WAC 284-30-330. An unfair trade practice under the CPA incorporates a reasonableness standard.
14 Because neither WAC 284-30-360 or 284-30-370 explicitly refer to reasonableness, American
15 Manufacturers Mut. Ins. Co. v. Osborn, 104 Wash. App. 686, 699, 17 P.3d 1229 (2001), a violation
16 of WAC 284-30-360 or 284-30-370 is not automatically an unfair trade practice. A violation of WAC
17 284-30-360 or 284-30-370 is an unfair trade practice only if the insurer acted unreasonably. As
18 discussed above, there are genuine issues of fact as to the reasonableness of Maryland's conduct.
19
20 The record is unclear as to whether Maryland violated WAC 284-30-350(1). Commonwealth
21 has not presented any evidence that Maryland failed to disclose any pertinent benefits, coverage, or
22 other provisions of the policy.
23 In sum, summary judgment is warranted only on the question of whether Maryland
24 acknowledged receipt of the claim within 10 days or investigated within 30 days. It is undisputed that
25 Maryland did not do so as required by WAC 284-30-360 or 284-30-370. However, summary

ORDER - 12

judgment is not warranted on the question whether either of these acts constitute an unfair trade practice because they are genuine issues of fact as to the reasonableness of Maryland's conduct. Likewise, summary judgment is not warranted on the question of whether Maryland violated WAC 284-30-330(2)-(5) because there are genuine issues of fact as to the reasonableness of Maryland's conduct.

## CONCLUSION

The Court GRANTS Commonwealth's Motion to Strike. The declarations of James Donovan and Dwain Britton are both inconsistent with previous deposition testimony by each, and there is no basis to conclude that the documents in the exhibits attached to their declarations are credible and reliable business records.

The Court DENIES Maryland's Motion for Summary Judgment. Commonwealth has presented sufficient evidence to show that damage began before Donovan completed its work, and that this damage continued and culminated in the February, 1999 flood. Commonwealth's expert, Robert Pride, opines that the damage began as early as July, 1998. Donovan potentially did not finish its work until sometime in July, 1998. Even though Pride's opinion is only an "estimate," it is sufficient to survive summary judgment.

The Court GRANTS in part and DENIES in part Commonwealth's Motion for Partial Summary Judgment. The undisputed facts show that Maryland did not respond within 10 days or investigate within 30 days of Ledcor's tender as required by WAC 284-30-360(1) and 284-30-370. Summary judgment is granted as to that single issue. Summary judgment is denied, however, as to whether Maryland violated WAC  284-30-330(2)-(5) because those regulations impose a reasonability standard and there are genuine issues of fact as to the reasonableness of Maryland's conduct. For this same reason, summary judgment is denied as to whether any of Maryland's conduct constitutes an unfair trade practice because this also incorporates a reasonability standard and there are genuine issues of fact as to the reasonableness of Maryland's conduct.

ORDER - 13

1     The clerk is directed to provide copies of this order to all counsel of record.

2     Dated: May 13, 2005

3

4                                     /s/ Marsha J. Pechman  
                                      Marsha J. Pechman  
                                      United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 14